## CHARLESTON DRY DOCK & MACHINE CO. v. UNITED STATES.

(Circuit Court of Appeals, Fourth Circuit. April 14, 1925.)

No. 2310.

Shipping ⬯76—Contract for repair of boiler of tender held to require installation of hard patch, as distinguished from soft one.

Contract for repairs to tender providing for "new patches on forward boiler, etc.," *held* to require installation of hard patch, as distinguished from a soft one.

In Error to the District Court of the United States for the Eastern District of South Carolina, at Florence; Henry A. Middleton Smith, Judge.

Suit by the United States against the Charleston Dry Dock & Machine Company. Judgment for the United States, and defendant brings error. Affirmed.

George H. Moffett, of Charleston, S. C. (Moffett & Hyde, of Charleston, S. C., on the brief), for plaintiff in error.

Louis M. Shimel, Asst. U. S. Atty., of Charleston, S. C. (J. D. E. Meyer, U. S. Atty., of Charleston, S. C., on the brief), for the United States.

Before WOODS, WADDILL, and ROSE, Circuit Judges.

WADDILL, Circuit Judge. This is a suit at law by the United States of America against the Charleston Dry Dock & Machine Company, to recover damages for failure to perform a contract entered into by the plaintiff and the Valk Murdock Company, defendant's predecessors, whose assets were acquired and its liabilities and obligations assumed by the defendant. The contract provided for repairs to the tender Maple, which included the installation of patches on the boiler of the tender. The price for the entire work was $19,740.00, which sum was paid to defendant's predecessor; the liabilities under the contract being assumed by the defendant.

The suit involves losses sustained by reason of the alleged breach of the contract, respecting the patches to be placed on the boiler, and whether the same conformed to specification 26 relating thereto, which is as follows:

"26. *New Patches on Forward Boiler, etc.* —Remove the soft patches on and near the circumferential seam. Build up by electric welding all grooving in shell plate under patches including calking edge of shell plate and rivets. Welding grooves to be dressed flush. Install new patches of the same thickness as the old ones removed. They shall be neatly fitted, securely bolted in place and the edges electric welded. The patches shall then be rebolted with grommets and washers under the head and nut and all work made perfectly tight under hydrostatic and steam pressure."

The dispute between the parties arose over the meaning of the specification, and wheth-

er the same contemplated the installation or placing on the boiler of what is known as hard or soft patches. The learned judge of the District Court was of opinion that hard patches, as distinguished from soft, were meant, and that those furnished failed to conform to the specification, and had to be replaced by the Speddin Shipbuilding Company at an expense of $1,285, and instructed a verdict in favor of the plaintiff for the amount, with interest and costs, from which action of the court this writ of error was sued out.

The assignments of error present for the consideration of the court the correctness of the ruling of the court as well in regard to the instruction of the verdict, as the exclusion of testimony pending the trial. The case turned largely upon what was understood as between hard and soft patches, and whether the court was right in its ruling that the former was contracted for. Considerable expert testimony was introduced by each side, largely centering around the difference in the two patches; Miller, an expert for the defendant, describing the same as follows:

"A hard patch is riveted on; sometimes in closer places they put them on with a patched bolt, and that is also called a hard patch. A soft patch is a patch put on with bolts, with some filling under it, putty, red lead, borings and such as that mixed together."

J. K. Cotton, another of defendant's experts, said:

"A soft patch is put on on the outside of a boiler, either head or shell. It is not allowed in a fire surface; that is, where the actual flames will touch it. It is not put for strength. It is put on more for a covering or protection with bolts, washers, and grommets put under the head and nut of the bolts, and the patch ordinarily lipped over at the edges and filled with red lead putty. Is what we know as a red lead patch made by dry red lead, white lead, linseed oil and cast-iron bearings, and placed against the part that is affected, or where you want to stop a leak, and drawn up with bolts, but the patch isn't put there for strength. It is put there to hold the red lead, putty, or whatever soft filling is used up against what we call pin-leaks-fine leaks. I have seen a patch where lead wasn't used, but I never saw one unless there was some soft filling. * * * There is several packages got out for that. If it wasn't a soft filling, it wouldn't be a soft patch.

"A hard patch is entirely different. It

is put on usually on the inside of the boiler, so that the pressure of the boiler will come against the back of the patch. It is riveted on, and the edges around is calked up, and the reason of putting it on the inside of the boiler instead of the outside is that the pressure of the boiler will bear against the back of the patch instead of shoving the patch off and throwing pressure against the rivets, if it was on the outside. * * *

"In all my long experience I never heard of a soft patch being used without red lead, until this one you are speaking of now on the Maple's boiler. That is the first I ever heard of."

Defendant's contention is that a soft patch, as distinguished from a hard patch, was contemplated, and that it was impractical to construct the same without the use of red lead or other soft material. The government, on the other hand, insisted that no putty, lead, or filler of any kind should be used, and the specification required that the patch be fitted in intimate contact all the way round the boiler, and securely and firmly bolted there, while electric welding was to be put around the edges for the purpose of making the joints tight, in place of red and white lead and other substances commonly used.

Defendant attempted to construct the patch as thus required, insisting, however, that the same could not be made pressure tight, and the result proved that leakage did occur even after several efforts to prevent the same. The government claimed that this condition was caused by the lack of proper construction, or the use of machinery not suitable for the work.

It does not seem probable that the government would have desired the putting of a soft patch, such as described by the witness Cotton above, on one of its boilers in an important steam vessel; and at all events, in the light of the terms of specification 26, we do not think it did so. On the contrary, that specification provided, as held by the judge of the District Court, for a hard patch as distinguished from a soft one; and of course, it was within the contemplation of the parties that a proper hard patch would be furnished. Under the construction placed upon the section in question by the District Court, a verdict was properly instructed for the plaintiff, as there was no dispute of the fact that the patch furnished did not conform to the requirements of the specification, and the work had to be done over by another repair yard at the cost mentioned.

The other assignments of error relate to

whether the government legally could have made the contract in question, under its general laws respecting inspection of steam vessels and boilers, and whether certain technical works on the subject of steam engineering could be read to the jury; and appear to us as immaterial to the merits of the case, and at all events that the court was entirely right in its rulings complained of.

The decision of the District Court will be affirmed.

Affirmed.